IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| ANDREW POHUTSKY, *on behalf of himself and all others similarly situated*, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:14-mn-00001-DCN No. 2:14-mn-03491-DCN |
| vs. | ) ) ) | **ORDER** |
| PELLA CORPORATION, | ) ) | |
| Defendant. | ) ) | |

This matter is before the court on a motion to dismiss brought by defendant Pella Corporation ("Pella"). For the reasons set forth below, the court grants Pella's motion and dismisses all of plaintiff's causes of action.

**I.   BACKGROUND**

Plaintiff Andrew Pohutsky ("Pohutsky") purchased Pella Architect and Designer Series windows to install in his home when it was constructed in 2000. Compl. ¶ 53. The windows were purchased directly from K.C. Company, Inc. ("KC"), one of the largest Pella retailers in the country, and shipped directly to Pohutsky. Id. Beginning in 2005, Pohutsky began noticing "signs of water leaks" in one of his windows and contacted KC. Id. ¶ 55. KC came to his home, inspected the windows, and told him that caulk was all that was necessary to correct the leaks. Id. ¶ 56. KC applied caulk to the leaking window and indicated that the problem was resolved. Id. In 2008, Pohutsky again noticed signs of water leaks in one of his windows and again called KC. Id. ¶ 58. KC again applied caulk and indicated that the problem was resolved. Id. ¶ 59. In 2013, Pohutsky once again noticed signs of water leaks and, after conducting an internet search

1

to determine if other people were experiencing similar problems, began to suspect that the windows were defective. Id. ¶ 61.

Pohutsky alleges that the windows suffer from various design deficiencies, including "a defect in the glazing pocket, the aluminum cladding, the crank hardware and the frame to sash joint." Id. ¶ 35. According to Pohutsky, these defects cause leaks and allow water to be "trapped between the aluminum and the operable wood frame causing damage to the Windows and other property within the home." Id. Pohutsky alleges that Pella was or should have been aware that its windows were defective and that Pella concealed its knowledge of repeated product defects. Id. ¶¶ 45, 48.

On August 13, 2014, Pohutsky filed a class action complaint against Pella in the United States District Court for the Northern District of Maryland, alleging jurisdiction based on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The complaint brings the following four causes of action: (1) breach of express warranty; (2) unjust enrichment; (3) violation of the Magnuson-Moss Warranty Act ("MMWA"); and (4) declaratory relief.

On August 29, 2014, the United States Panel on Multidistrict Litigation transferred the case to this court as part of the consolidated multidistrict litigation. Pella filed the instant motion to dismiss on October 13, 2014. Pohutsky opposed the motion on November 4, 2014, and Pella replied on November 24, 2014. Pella's motion to dismiss has been fully briefed and is ripe for the court's review.

## II.  STANDARDS

### A.  Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief."  Id. at 679.  Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "Facts pled that are 'merely consistent with' liability are not sufficient."  A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

### B.  Applicable Law

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law.  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 416 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)).  "In multidistrict litigation, the law of the transferee

3

circuit governs questions of federal law." In re KBR, Inc., 736 F. Supp. 2d 954, 957 (D. Md. 2010) modified on reh'g sub nom. In re KBR, Inc., Burn Pit Litig., 925 F. Supp. 2d 752 (D. Md. 2013) vacated and remanded on other grounds, 744 F.3d 326 (4th Cir. 2014); see also In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987); cf. Bradley v. United States, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (applying Fourth Circuit law to questions of federal law in a case transferred from the Fifth Circuit). Therefore, this court must apply Maryland substantive law and Fourth Circuit procedural law.

## III.  DISCUSSION

Pella asserts that all of Pohutsky's claims should be dismissed. The court first determines whether the applicable statutes of limitations are tolled by fraudulent concealment, equitable tolling, or class action tolling. The court will then consider Pella's arguments about each claim individually.

### A.  Tolling

Pella argues that all of Pohutsky's claims are barred by their respective statutes of limitation. While the specific statute of limitations for each claim will be discussed below, the parties argue about the application of three tolling doctrines to all of the statutes of limitation: fraudulent concealment, equitable estoppel, and class action tolling.

### 1.     Fraudulent Concealment

Pohutsky first argues that Pella is estopped from relying on any statute of limitations defense because it fraudulently concealed that its windows were defective. Compl. ¶ 73; Pl.'s Resp. 5.

Under Maryland law, "[i]f the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." Md. Code Ann., Cts. & Jud. Proc. § 5-203; see Moreland v. Aetna U.S. Healthcare, Inc., 831 A.2d 1091, 1097 (Md. Ct. Spec. App. 2003) (noting that section 5-203 "governs tolling of limitations on the basis of fraudulent concealment"). "The aggrieved party asserting such fraud or concealment must plead affirmatively and with specificity the supporting facts in its complaint." Dual Inc. v. Lockheed Martin Corp., 857 A.2d 1095, 1105 (Md. 2004). "[A] complaint relying on the fraudulent concealment doctrine must also contain specific allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." Id. at 1105–06 (internal quotation marks and citation omitted). The pleadings must "demonstrate specific facts that support a finding of fraud or concealment, and must go beyond mere conclusory statements." Id. at 1106 (citation omitted).

Nowhere in Pohutsky's complaint or response does he allege when he actually discovered the alleged fraudulent concealment. Thus, the court has no indication when any tolling of the statute of limitations should have ended. Therefore, Pohutsky is not entitled to rely on fraudulent concealment to toll the statutes of limitations. See

Summerhill v. Terminix, Inc., 637 F.3d 877, 881 (8th Cir. 2011) ("By failing to allege when and how he discovered [defendant's] alleged fraud, [plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims."); Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp., 546 F.2d 570, 574 (4th Cir. 1976) ("A complaint, (to avoid the statute of limitations,) must state . . . distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether, by the exercise of ordinary diligence, the discovery might not have been before made." (citation omitted)); Bergen v. Rothschild, 648 F. Supp. 582, 587 (D.D.C. 1986) ("In general, courts read Rule 9(b) as requiring the fraudulent concealment plaintiff to plead with as much particularity as possible . . . the dates and circumstances of the eventual discovery of the underlying fraud."); Stewart Coach Indus., Inc. v. Moore, 512 F. Supp. 879, 886 (S.D. Ohio 1981) (holding that a plaintiff relying on the "discovery rule" must "affirmatively and particularly plead the date of discovery . . . or face dismissal of the complaint"); Dual, 857 A.2d at 1105–06 (Md. 2004) ("[A] complaint relying on the fraudulent concealment doctrine must also contain specific allegations of . . . how the fraud was discovered . . . ."); 51 Am. Jur. 2d Limitation of Actions § 163 ("One may not avoid the effect of the statute of limitations on the ground of fraudulent concealment if he or she fails to plead or offer evidence as to when he or she discovered the alleged fraud.").

     Even if fraudulent concealment did apply, Pohutsky bases his argument on Pella allegedly concealing the fact that the windows are defective. Compl. ¶ 73–76. As discussed below regarding the discovery rule, Pohutsky was on notice that the windows

were defective by at least 2008 when he noticed his windows leaking for a second time. See Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A, 834 A.2d 170, 179 (Md. Ct. Spec. App. 2003) ("The fraud exception is essentially a tangent of the [common law] discovery rule"). Therefore, any tolling based on fraudulent concealment would cease by 2008. As discussed below, even if the statutes of limitations were tolled pursuant to fraudulent concealment until 2008, Pohutsky's claims would still be time-barred.

### 2. Equitable Estoppel

Next, Pohutsky argues that Pella is equitably estopped from asserting a statute of limitations defense. Pl.'s Resp. 8.

> Equitable estoppel is
>
> the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

Knill v. Knill, 510 A.2d 546, 549 (Md. 1986) (citation omitted). The "essential elements" necessary to establish equitable estoppel are: (1) voluntary conduct or representation, (2) reliance, and (3) detriment. Markov v. Markov, 758 A.2d 75 (Md. 2000). Although wrongful or unconscionable conduct is generally an element of estoppel, an estoppel may arise even where there is no intent to mislead, if the actions of one party cause a prejudicial change in the conduct of the other. Knill, 510 A.2d at 549–50. "[I]t is well settled that equitable estoppel will not toll the running of limitations absent a showing that the defendant held out any inducements not to file suit or indicated that limitations would not be pleaded." Booth Glass Co. v. Huntingfield Corp., 500 A.2d 641, 645 (Md. 1985) (internal quotation marks and citations omitted). Additionally, a

7

plaintiff must bring "his or her action within a reasonable time after the conclusion of the events giving rise to the estoppel." Murphy v. Merzbacher, 697 A.2d 861, 866 (Md. 1997).

Pohutsky argues that Pella's failure to disclose the defective nature of the windows establishes a basis for equitable estoppel. Pl.'s Resp. 8–9. As an initial matter, it is not clear that a failure to disclose a defect is an "inducement not to file suit." Booth Glass, 500 A.2d at 645. Regardless, by at least 2008, Pohutsky was on notice that his windows were potentially defective. Pohutsky does not allege any actions by Pella following the initial sale of the windows. However, he still did not file his complaint until six years after he noticed water leaking for the second time and fourteen years after Pella's conduct which he alleges warrants equitable estoppel. The court finds that Pohutsky has failed to bring his action within a reasonable time after the conclusion of the events giving rise to the estoppel and, therefore, declines to toll the statutes of limitation based on equitable estoppel.

### 3.     Class Action Tolling

Finally, Pohutsky contends that the filing of a previous class action in federal court in the Northern District of Illinois, Saltzman v. Pella, tolled the statutes of limitation for his claims. Compl. ¶ 81.

The doctrine of class action tolling was first announced in American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974). In American Pipe, the Supreme Court held that an applicable statute of limitations is tolled during the pendency of a class action for putative class members who intervene after the denial of class certification—at least where certification is denied for failure to meet the numerosity requirement of Federal

Rule of Civil Procedure 23.  Id. at 552–53; see also id. at 554 ([T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.").  The Supreme Court has extended the American Pipe rule to purported members of the class who later file individual suits rather than intervene.  Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983).

American Pipe tolling, however, applies only to a "subsequently filed federal question action . . . during the pendency of a federal class action."  Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999) (citing American Pipe, 414 U.S. 552–53) (emphasis added); see also Vincent v. Money Store, 915 F. Supp. 2d 553, 560–61 (S.D.N.Y. 2013) ("The American Pipe case concerned the tolling of claims under a federal statute, the Sherman Act.  It did not purport to announce a rule that would apply to state law claims. . . .  The plaintiffs cannot rely on American Pipe to toll the statutes of limitations for their state law claims.  The plaintiffs must look to any state analogue to American Pipe tolling rather than American Pipe itself.").  Therefore, the court must determine whether Maryland law would toll the statutes of limitation during the pendency of the Saltzman federal class action.

This case deals with what has been termed "cross-jurisdictional" class action tolling—that is, tolling during the pendency of a class action in another court, in this case a federal court in Illinois.  See Wade, 182 F.3d at 287 (defining cross-jurisdictional class action tolling).  Maryland's highest court has expressly declined to rule on whether to adopt cross-jurisdictional class action tolling.  Philip Morris USA, Inc. v. Christensen, 905 A.2d 340, 357 (Md. 2006) ("We express no opinion as to whether we would

9

recognize the doctrine of cross-jurisdictional class action tolling . . . ."). More recently, the Maryland Court of Special Appeals rejected cross-jurisdictional tolling. Adedje v. Westat, Inc., 75 A.3d 401, 418 (Md. Ct. Spec. App. 2013) (agreeing with the majority of courts to have rejected cross-jurisdictional tolling and likening it holding to Wade)

The Fourth Circuit has been reluctant to read cross-jurisdictional tolling into state law where it is otherwise silent. Wade, 182 F.3d 281, 287 (4th Cir. 1999) (applying Virginia law); see also Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025 (9th Cir. 2008) (declining to import a cross-jurisdictional tolling rule into California law, which otherwise does not have such a rule, and finding that "[t]he rule of American Pipe—which allows tolling within the federal court system in federal question class actions—does not mandate cross-jurisdictional tolling as a matter of state procedure"); Soward v. Deutsche Bank AG, 814 F. Supp. 2d 272, 282 (S.D.N.Y. 2011) (holding that New York would not apply cross-jurisdictional tolling and noting that the "few states that have considered the issue have been split in both their acceptance of cross-jurisdictional tolling and the rationale for their decision").

In short, Maryland has not adopted cross-jurisdictional class action tolling and the court declines to establish such a rule in the first instance, especially where a Maryland intermediate appellate court has rejected the doctrine. See St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995) ("[T]he federal courts in diversity cases, whose function it is to ascertain and apply the law of a State as it exists, should not create or expand that State's public policy."). Therefore, the statutes of limitation for plaintiffs' claims are not tolled by class action tolling.

### B.    Counts I & III—Breach of Express Warranty and MMWA Violation

Pella contends that Pohutsky's breach of express warranty claim is barred by the statute of limitations. Def.'s Mot. 5.

Under Maryland law, breach of warranty claims are subject to a four-year statute of limitations.[1]  Md. Code Ann., Com. Law § 2-725(1). The statute of limitations accrues upon delivery unless the warranty "explicitly extends to future performance of the goods . . . ." Id. § 2-725(2). Because the windows were delivered in 2000, Pohutsky's breach of express warranty claim is barred unless the warranties extend to future performance.

To constitute a warranty of future performance, a warranty must specify that manufacturer is warranting the future performance of the goods for a specific period of time. Joswick v. Chesapeake Mobile Homes, Inc., 765 A.2d 90, 96 (Md. 2001); see also id. at 95 ("[A] provision will not be interpreted as applying to future performance unless it very clearly does so" (internal quotation marks and citation omitted)). "[I]f there is any ambiguity it must be interpreted against the existence of . . . a warranty [for future performance]." Id. at 95 (internal quotation marks and citation omitted).

Pohutsky alleges that Pella breached various warranties by shipping defective windows not appropriate for their intended use.[2]  See Compl. ¶¶ 29–52, 86–94.

---

[1] The MMWA does not contain a statute of limitations, so courts have held such claims are governed by the same limitations period that applies to the underlying state law breach of warranty claims. See Highway Sales, Inc. v. Blue Bird Corp., 559 F.3d 782, 789 (8th Cir. 2009); Edwards v. Hyundai Motor Am., 163 S.W.3d 494, 501 (Mo. Ct. App. 2005).

[2] Pohutsky, like other plaintiffs in this MDL, alleges Pella has not "sufficiently repaired or replaced" the defective windows in his home. Compl. ¶ 97. However, Pohutsky does not allege that he has ever contacted Pella to make a warranty claim. Therefore, he cannot advance a breach of express warranty claim based on Pella's failure to sufficiently repair or replace his windows.

However, none of the warranties cited by Pohutsky mention a specific period of time. In his response, Pohutsky only argues that one warranty extends to future performance. Pl.'s Resp. 5. Pohutsky alleges that "Pella represented and warranted that each Window conformed to the . . . applicable ASTM standards." Compl. ¶ 29. Pohutsky argues that this warranty extends to future performance because ASTM standards state that "the minimum anticipated service life for a window is 20–25 years." Pl.'s Resp. 5 (citing Compl. ¶ 38). However, such a warranty by implication does not "clearly and explicitly extend to future performance." Joswick, 765 A.2d at 96. Moreover, the warranty does not include a specific period of time, but rather a range of years. Finally, any ambiguity must be interpreted against the existence of a warranty for future performance. Id. at 95.

Because Pohutsky does not allege any warranties extending to future performance, the court dismisses his breach of express warranty and MMWA claims as barred by the statute of limitations.

### C.     Count II—Unjust Enrichment

Pella argues that Pohutsky's unjust enrichment claim is barred by the statute of limitations. Def.'s Mot. 7.

Under Maryland law, unjust enrichment claims are subject to a three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101; Llanten v. Cedar Ridge Counseling Ctrs., LLC, 75 A.3d 1030, 1034 (Md. Ct. Spec. App. 2013) (holding that because an unjust enrichment claim is analogous to the legal remedies of breach of contract and conversion, section 5-101 provides the statute of limitations). Unjust enrichment claims are governed by the "discovery rule," under which a "cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong."

Ross v. Triad Fin. Corp., 2006 WL 5530495, at *2 (D. Md. Aug. 15, 2006) (citing Poffenberger v. Risser, 431 A.2d 677, 680 (Md. 1981)). "The 'discovery rule' operates as an exception to the accrual rule when a plaintiff does not know, or could not through the exercise of reasonable diligence know, of the wrong, whether the wrong is a breach of a tort duty or a breach of contract." Kumar v. Dhanda, 17 A.3d 744, 748 n.2 (Md. Ct. Spec. App. 2011). The statute of limitations begins to run when a plaintiff has "knowledge of circumstances which would cause a reasonable person in the position of the plaintiff[] to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [cause of action]." Lumsden v. Design Tech Builders, Inc., 749 A.2d 796, 802 (Md. 2000).

Pohutsky began noticing water leaks in one of his windows in 2005. Compl. ¶ 55. He again noticed signs of water leaks in 2008. Id. ¶ 58. In a case with similar facts—although it involved a negligent installation claim as opposed to a breach of warranty claim—the defendant installed exterior glass in a new building. Booth Glass, 500 A.2d at 642. Shortly after installation, the plaintiff noticed the glasswork leaking. Id. The Maryland Court of Appeals held that when the plaintiff first noticed that the glasswork was leaking, it was "upon notice that [the defendant] may have been negligent." Id. at 643 (emphasis added). The same reasoning applies here. By at least 2008, Pohutsky was on notice that Pella may have provided defective windows. By "fail[ing] to seek out the facts supporting a cause of action, it can fairly be said that [Pohutsky] has inexcusably slept on his rights." Lumsden, 749 A.2d at 802.

Because Pohutsky's unjust enrichment claim had expired by 2011, around three years before he filed suit, the court dismisses Pohutsky's unjust enrichment claim as barred by the statute of limitations.

### D.     Count IV—Declaratory Relief

Finally, Pella argues that Pohutsky's claim for declaratory relief must be dismissed because the Declaratory Judgment Act does not create an independent cause of action. Def.'s Mot. 20.

The Declaratory Judgment Act states that

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C.A. § 2201. The Declaratory Judgment Act is procedural only, Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)), and "does not create an independent cause of action." Chevron Corp. v. Naranjo, 667 F.3d 232, 244 (2d Cir. 2012). Because the court dismisses all of Pohutsky's other claims against Pella, it also dismisses his declaratory judgment claim.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS** Pella's motion and **DISMISSES WITHOUT PREJUDICE** all of Pohutsky's causes of action against Pella.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 19, 2015**
**Charleston, South Carolina**